IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SUNSOUTH BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:13-CV-379-WKW |
| ) | [WO] |
| FIRST NBC BANK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendants First NBC Bank and HCB Financial Corp.'s Motion to Dismiss and Memorandum in Support, as Amended (Docs. # 16, 17, 18) and Plaintiff SunSouth Bank's Motion to Amend the Complaint (Doc. # 31). The motions have been briefed. (Docs. # 19, 22, 23 (motion to dismiss); # 35 (motion to amend).) Upon consideration of the motions, arguments, and the applicable law, the court concludes that Defendants' motion to dismiss is due to be denied and SunSouth's motion to amend is due to be granted.

**I. JURISDICTION AND VENUE**

Defendants assert this court lacks subject-matter jurisdiction and that venue is improper. (*See* Doc. #17, at 4–10.) Neither Defendant objects to personal jurisdiction. As the court will discuss *infra*, Defendants' arguments regarding subject-matter jurisdiction are not well-taken. The court exercises subject-matter

jurisdiction pursuant to 28 U.S.C. § 1332(a),[1] and venue is proper in this district pursuant to 28 U.S.C. §§ 1390(c); 1441(a).

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Defendants invoke Rule 12(b)(1) in support of their motion to dismiss filed on February 20, 2014, but Rule 12(b) "defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).  Defendants answered SunSouth's complaint in September 2013, but it is never too late to point out a federal court's lack of subject-matter jurisdiction.  The court must dismiss an action if it determines "*at any time* that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3) (emphasis added).

Attacks on subject-matter jurisdiction come in two forms: facial and factual. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  This is a facial attack because Defendants rely entirely on the substance of the complaint, documents referenced in the complaint, and inferences from the allegations in the complaint.  In a facial attack, the plaintiff's jurisdictional allegations are accepted as true.  *See id.*

---

[1] SunSouth is an Alabama banking corporation; First NBC is a Louisiana banking corporation; and HCB Financial is a Florida corporation.  The amount in controversy, which is not disputed, exceeds $75,000.

2

**B.      Motion to Amend the Complaint**

Rule 15 of the Federal Rules of Civil Procedure governs the allowance of amendments to the pleadings. As a matter of course, a party may amend a pleading to which a responsive pleading is required once within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, a party wishing to amend its pleadings before trial must seek the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). Though "[t]he court should freely give leave when justice so requires," *id.*, the court may deny a motion to amend "on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment," *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing the same grounds and adding "bad faith or dilatory motive on the part of the movant" and "repeated failure to cure deficiencies by amendments previously allowed").

An amendment is futile "when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. BACKGROUND

**A.** <u>Facts</u>

On February 4, 2009, SunSouth bought a 40.1553% participation interest in loans made by Central Progressive Bank to Mississippi Investors VI, LLC. SunSouth's rights are recorded in a Participation Agreement. (*See* Doc. # 23-1.) On February 5, 2009, SunSouth assigned a sub-participation interest to Citizens State Bank for 58.566% of its 40.1553% participation interest. Per the Participation Agreement, SunSouth held the "first out" rights to be paid in full first in the event that Mississippi Investors defaulted on its loans to Central Progressive Bank.

Mississippi Investors did in fact default on its obligation, and Central Progressive Bank pursued collection, but Central Progressive Bank did not collect anything before it failed as a bank. At that point, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. The FDIC sold all of Central Progressive Bank's assets, including ownership of the Mississippi Investors loans and entitlement to collection for default, in a "whole bank" sale to First NBC

Bank.  (*See* Doc. # 22 (Purchase and Assumption Agreement Among the FDIC as Receiver, the FDIC, and First NBC).)  There is no allegation that the FDIC took any collection action on the Central Progressive Bank loan to Mississippi Investors.  According to SunSouth, First NBC purchased all rights and assumed all obligations set out in the Participation Agreement that Central Progressive Bank entered with SunSouth.

The complaint alleges that First NBC successfully collected several hundred thousand dollars after selling collateral that secured the Mississippi Investors loans.  The funds allegedly have been kept segregated and are identifiable.  SunSouth claims that 100% of these funds belonged to it, and thus, it demanded the funds from First NBC.  First NBC refused to surrender the funds or to provide an accounting to SunSouth.

In June 2011, SunSouth and Citizens State agreed to sell their respective participation and sub-participation agreement interests in the Mississippi Investors loans to HCB Financial, a non-banking institution that purchases loans and participation interests.  SunSouth also agreed to sell an unrelated loan to HCB Financial in the same transaction.  The purchase price for the transfer of assets was $2,200,000 which would be paid to SunSouth through two separate sources and at two separate closings.  HCB Financial paid SunSouth partially in cash and agreed to pay the remaining $911,548 "upon satisfaction of mutually agreeable conditions

5

precedent." The parties contemplated that HCB Financial would acquire the $911,548 balance from the sale of real estate to a purchaser financed by SunSouth.

Meanwhile, HCB Financial informed First NBC that it had become the owner of SunSouth's "first out" participation interest and that it was entitled to payment of all collections received by First NBC until HCB Financial was paid in full.

Returning to the deal contemplated by SunSouth and HCB Financial, the real estate purchaser decided not to purchase the property that would have funded the balance due to SunSouth, and the $911,548 balance remained unpaid. SunSouth and HCB Financial tried to negotiate alternative payment proposals, but they never reached mutually acceptable terms. SunSouth then terminated its sales agreement with HCB Financial, but HCB reappeared shortly on the other side of the ledger.

SunSouth reasserted its demands upon First NBC for the surrender of the proceeds due pursuant to the Participation Agreement and for an accounting. First NBC refused to comply with either demand. After allegedly converting SunSouth's property (*i.e.*, the proceeds from the sale of Mississippi Investors collateral), First NBC then sold its interest as the lead bank in the Mississippi Investors loans to HCB Financial. In the complaint, SunSouth alleges that First NBC was obligated to obtain SunSouth's consent to such an assignment but failed

to receive consent, and therefore, the assignment to HCB Financial was invalid. SunSouth has since dropped that allegation in its proposed amended complaint. (*Compare* Doc. # 1-7 *with* Docs. # 31-1, 31-2.)[2]

SunSouth maintains that HCB Financial assumed responsibilities to SunSouth under the Participation Agreement.  SunSouth has demanded delivery of its property and an accounting from HCB Financial, and HCB Financial has refused both demands.  HCB Financial did inform SunSouth, however, that the sale of collateral had resulted in the receipt of approximately $640,000.

B.     **Procedural History**

On February 26, 2013, SunSouth filed the instant case against First NBC and HCB Financial in Houston County Circuit Court. (*See* Doc. # 1-7.)   On June 5, 2013, HCB Financial removed the case to federal court with First NBC's consent. (*See* Docs. # 1, 2.)  Both Defendants answered the complaints.  (Docs. # 12, 13.) Several months later in February 2014, Defendants moved to dismiss the complaint in its entirety pursuant to Rule 12(b)(1), (6), and (7).  (*See* Doc. # 18, at 1.)  The gist of Defendants' motion is that the claims implicate the FDIC's receivership of Central Progressive Bank, and therefore, that this court lacks subject-matter jurisdiction.

---

[2] Similarly, in the original complaint, SunSouth claimed that HCB Financial attempted to pledge its interest and the Citizens State sub-participation interest to First NBC to secure a loan. SunSouth opposed the alleged pledge to HCB Financial as invalid and legally null because SunSouth did not consent to it, but SunSouth has removed this allegation from its proposed amended complaint.  (*Compare* Doc. # 1-7 *with* Docs. # 31-1, 31-2.)

7

SunSouth has responded and filed a motion for leave to amend the complaint. (*See* Docs. # 19, 31.) SunSouth hints at a novel allegation that it is a third party beneficiary to the Purchase and Assumption Agreement between the FDIC and First NBC and to the sales agreement between First NBC and HCB Financial.[3] In its proposed amended complaint, SunSouth states four claims: (1) Count I against First NBC for breach of the Participation Agreement; (2) Count II against First NBC for conversion; (3) Count III against HCB Financial for breach of the Participation Agreement; and (4) Count IV against HCB Financial for conversion. (*See* Docs. # 31-1, 31-2.)

## IV.  DISCUSSION

**A.**  **Motion to Dismiss**

Defendants contend that the court must dismiss this case because SunSouth failed to comply with the requirements of the Financial Institutions Reform, Recovery[,] and Enforcement Act ("FIRREA"), and therefore the court lacks subject-matter jurisdiction.

Congress enacted FIRREA, among other reasons, to enable the FDIC to wind up the affairs of failed financial institutions.  The law creates an administrative claims process for banks in receivership with the FDIC. *See Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1141 (D.C. Cir. 2011) (citing 12 U.S.C.

---

[3] The third party beneficiary assertions are in the headings but not in the body of the proposed amended complaint.

§ 1821(d)(3)–(13)).  Judicial review of disallowed claims is permitted after a claimant's administrative remedies have been exhausted.  *See* 12 U.S.C. § 1821(d)(6).  But where a claimant has failed to comply with § 1821(d)(6), courts are barred from exercising jurisdiction over

> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

*Id.* § 1821(d)(13)(D); *see also Damiano v. F.D.I.C.*, 104 F.3d 328, 333 (11th Cir. 1997) ("For post-receivership claims, the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies.").  Thus,

> the plain language of [§ 1821(d)(13)(D)] . . . divests the district court[s] of jurisdiction over requests for relief which can be characterized as:  (1) claims for payment from assets of any depository institution for which the [FDIC] has been appointed Receiver; (2) actions for payment from assets of such depository institutions; (3) actions seeking a determination of rights with respect to the assets of such depository institutions; and (4) a claim relating to any act or omission of such institution or the [FDIC] as receiver.

*Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999) (citing *Nat'l Union Fire Ins. v. City Sav., F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994)).  Successors-in-interest to the FDIC which purchase the assets of failed banks stand in the shoes of the FDIC, and may assert as a defense that a party has

failed to exhaust administrative remedies pursuant to FIRREA. *Id.* at 1263 n.3; *see also Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 447 (E.D.N.Y. 2010).

Defendants assert that SunSouth's failure to file a claim with the FDIC pursuant to FIRREA bars the instant suit. They contend that SunSouth's limitation of its claims to Defendants, as opposed to the FDIC, is an impermissible attempt "to unwind the [FDIC's] assignment of the Participation Agreement" to First NBC. (Doc. # 17, at 7.) Defendants propose that if SunSouth were to prevail in this case and receive a judgment for damages against either of them for breach of contract or conversion, or if SunSouth were to obtain a declaration requiring a rescission of First NBC's assignment of the Mississippi Investors loan from First NBC to HCB Financial, then the FDIC would be exposed to liability to institutions that purchase assets from receivership, which would "chill" the FDIC's ability to make future sales as receiver for failed financial institutions. (*See* Doc. # 17, at 7 (citing *Beal Bank Nev. v. Bus. Bank of St. Louis*, Case No. 4:11 CV 561 DDN, 2011 WL 3444241, at *8 (E.D. Mo. Aug. 8, 2011)).)

Defendants further assert that Count V of SunSouth's complaint in particular must be dismissed for lack of subject-matter jurisdiction. Subsection (j) of § 1821 provides that, "[e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or

affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j).  Defendants claim that the FDIC first exercised its power to transfer the Mississippi Investors loans to First NBC, and First NBC stood in the FDIC's shoes when it later sold the same loan to HBC Financial.  *See Lake Forest*, 198 F.3d at 1263 n.3.  Thus, Defendants argue, the declaratory relief requested in Count V of SunSouth's complaint is "a request for the very equitable relief prohibited by 12 U.S.C. § 1821(j)."  (Doc. # 17, at 9.)

SunSouth responds that Defendants misrepresent the request for relief in Count V.  SunSouth clarifies that it was requesting a declaration that "*after* First NBC purchased the lead participation interest from the FDIC and assumed all obligations under the Participation Agreement, First NBC was required to obtain SunSouth's consent before transferring the lead participation interest" to HCB Financial.  (Doc. # 19, at 2 (emphasis in original).)  In spite of its explanation for Count V, SunSouth responds that it wishes to abandon Count V and has filed a motion for leave to amend its complaint accordingly.  (*See* Doc. # 31 (Motion to Amend).)  Further, the proposed amended complaint deletes any allegations that First NBC failed to obtain SunSouth's consent prior to transferring the Mississippi Investors loan to HCB Financial, or that HCB Financial failed to obtain SunSouth's consent to HCB Financial's alleged pledge of the Mississippi Investors loans income as security for a loan.  In the absence of a compelling argument from

Defendants against allowing the amendment, (*see* Doc. # 35, and discussion of motion to amend *infra*), SunSouth is entitled to amend its complaint to abandon Count V, and the court will not engage in any analysis related to Defendants' arguments for dismissal as those arguments relate to Count V.

Without Count V, SunSouth asserts that Defendants' motion to dismiss is moot. SunSouth contends that FIRREA has no application to SunSouth's claims against Defendants and that the FDIC is not a necessary party to this case. SunSouth stresses that it never had an administrative claim to submit against Central Progressive Bank or the FDIC because, before and during receivership, neither Central Progressive Bank nor the FDIC collected any funds or collateral in satisfaction of the Mississippi Investors loans. (*See* Doc. # 19, at 5.) Hence, SunSouth's claims against Defendants arise from alleged breaches of the Participation Agreement and conversion of funds that have occurred *since* the FDIC sold the Mississippi Investors loan and the Participation Agreement to First NBC. As a result, SunSouth declares that the FDIC has no interest in the instant litigation and thus is not a necessary party under Rule 19.

SunSouth cites *City & Suburban Management Corp. v. First Bank of Richmond*, 959 F. Supp. 660, 664 (D. Del. 1997), and *Bank of Commerce v. Business Bank of St. Louis*, 4:11CV428 JCH, 2011 WL 4635929 (E.D. Mo. Oct. 6, 2011), as examples of cases where successors to failed banks were, depending on

their status as plaintiff or defendant, either allowed to enforce or compelled to comply with participation agreements after failed banks went through FDIC receivership.[4]

In reply, Defendants fixate upon SunSouth's allegation in the original complaint that First NBC breached the Participation Agreement when it failed to obtain SunSouth's consent to the transfer of the Mississippi Investors loan to HCB Financial. (*See* Compl., Doc. # 1-7, at ¶ 25 (alleging that because SunSouth did not consent to First NBC's assignment to HCB Financial, the assignment is invalid).) Defendants argue that SunSouth believes that it is "entitled to look to [First ]NBC for the lead bank obligations," even though First NBC no longer owns the Mississippi Investors loans. According to Defendants, SunSouth's interpretation of the agreement and theory of First NBC's liability demonstrates that SunSouth is "trying to impose upon [First ]NBC a restriction on transfer that is not contained in the Participation Agreement nor required of the FDIC." (Doc. # 23, at 3.) Defendants assert that SunSouth may not allege that First NBC

---

[4] In *City & Suburban*, the defendant bank, which was a successor-in-interest to a failed bank that was formerly under the FDIC's receivership, attempted to avoid a contractual obligation to pay subordinated advances to the plaintiff pursuant to a participation agreement. Among other defenses, the defendant asserted that its contractual obligation was preempted by FIRREA, particularly § 1821(i)(2), which sets the maximum liability of the FDIC for any claim against it or the failed FDIC-insured bank. *See City & Suburban*, 959 F. Supp. at 666–67 (citing 12 U.S.C. § 1821(i)(2)). That is, of course, a different defense than the failure-to-exhaust-remedies and lack-of-subject-matter-jurisdiction arguments presented by Defendants in this suit. Moreover, no subsection of § 1821 is discussed anywhere in the *Bank of Commerce* decision cited by SunSouth. This does not mean that SunSouth's arguments are baseless, but SunSouth has not offered cases where a court has rebuffed defenses like the ones advanced in this case.

breached the Participation Agreement by transferring the loan to HCB Financial *without also suggesting* (if not outright alleging) *that the FDIC also breached the Participation Agreement* by transferring the Mississippi Investors loans without SunSouth's consent. And if SunSouth's theory of liability implicates the FDIC, then FIRREA applies, and SunSouth has failed to join the FDIC as a party, not to mention invoke FIRREA's administrative claims process prior to filing a judicial complaint.

Defendants also advance the more basic contention that the Participation Agreement and collateral for the Mississippi Investors loans were "assets" held by Central Progressive Bank and the FDIC, and thus, SunSouth's claims are subject to FIRREA. (*See* Doc. # 23, at 4 (citing the wrong subsections of § 1821).)

Defendants' reply brief makes its theory for dismissal clearer. However, it does not rebut SunSouth's fundamental argument that FIRREA has no application to this suit. FIRREA has been likened to "an almost impenetrable thicket," and § 1821(d) in particular has been described as a seven-page "avalanche of words." *F.D.I.C. v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1299 (11th Cir. 1998) (quoting *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1151 (1st Cir. 1992)). Defendants are perhaps hopeful that they can lose the court in the woods and bury SunSouth's claims under the avalanche. But having reviewed the authorities cited in Defendants' briefing, Defendants offer inapposite judicial opinions dismissing claims against

successor banks that could and should have been brought against the failed financial institution or the FDIC *before or during receivership*. Defendants are unresponsive to SunSouth's contention that it did not have any claims to assert against Central Progressive Bank or against the FDIC while the FDIC held Central Progressive Bank's assets in receivership. SunSouth says it did not file a claim and exhaust administrative remedies pursuant to FIRREA because there was not, before or during the receivership, any collection activity or income generated from the Mississippi Investors loan against which to lodge a claim. In other words, there is no "claim or action for payment from" or "action seeking a determination of rights with respect to" the "assets" of Central Progressive Bank or the FDIC as receiver for Central Progressive Bank. 12 U.S.C. §1821(d)(13)(D). Neither is there any "claim relating to any act or omission of" those entities. *Id.*

Instead, SunSouth claims that *after* Central Progressive Bank's failure, receivership, and "whole bank" sale to First NBC, First NBC and HCB Financial, as successors-in-interest to the Mississippi Investors loans, have collected on the assets and recovered hundreds of thousands of dollars. Accordingly, SunSouth alleges that each Defendant, as a party to the Participation Agreement, owes it money directly, pursuant to the terms of the Participation Agreement.

In the absence of contrary authority, the court finds that FIRREA does not, in this instance, bar SunSouth's claims against First NBC and HCB Financial, and

that allowance of this action will not curtail the FDIC in its ability to fulfill its statutory obligations as receiver of failed financial institutions. Following Defendants' reasoning, every contract dispute between a plaintiff and a defendant which is a successor-in-interest to a failed institution's obligations would be subject to the FDIC claims process irrespective of whether the plaintiff had a claim against the FDIC or the failed institution. This is a misapprehension of the jurisdictional bar of FIRREA, and would create a potential flood of claims to be resolved by the FDIC claims process. *See* 12 U.S.C § 1821(d)(13)(D); *cf. Am. Nat. Ins. Co.*, 642 F.3d at 1142 ("[T]he only claims that are resolvable through the [FIRREA] administrative process are claims against a depository institution for which the FDIC is receiver. Because [plaintiffs'] suit is against a third-party bank for its own wrongdoing, not against the depository institution for which the FDIC is receiver . . ., their suit is not a claim within the meaning of [FIRREA] . . . ."). Defendants' argument, if accepted, is the one that would curtail the FDIC in its primary mission of fulfilling its obligations as receiver.

Consequently, the FDIC is not a necessary party pursuant to Rule 19, the court has federal-diversity subject-matter jurisdiction over this action, and the motion to dismiss, as amended, is due to be denied.[5]

---

[5] Defendants also advance a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (*See* Doc. # 17, at 11–13.) A Rule 12(b)(6) motion is woefully late. *See* Fed. R. Civ. P. 12. Even if the motion were properly before the court, it appears to be repetitive of the

B.  **Motion for Leave to Amend the Complaint**

As mentioned *supra*, SunSouth moves to amend its complaint.  SunSouth describes its amendments and its motivations for amending as follows:

> SunSouth desires to render as moot Defendants' efforts to delay the resolution of Counts I–IV by making it clear that no relief is being sought that could have any possible effect upon the FDIC and to conserve the resources of the Court and the parties.  In a further effort to demonstrate that SunSouth supports the FDIC's assignment, SunSouth has pleaded factually the elements of a claim for breach of the Purchase and Assumption Agreement as a third party beneficiary. ([Amended] Complaint ¶¶ 9–10).  Defendants will not be prejudiced by SunSouth's deletion of Count V or by its clarification of its contract claims to include SunSouth as a third party beneficiary of the Purchase and Assumption Agreement between the FDIC and First NBC.

(Doc. # 31, at ¶ 7.)

Defendants oppose the motion on several grounds.  First, they assert that because there were allegedly jurisdictional defects in the original complaint, the court lacks authority to allow an amendment.  (*See* Doc. # 35, at 5 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989) (interpreting 28 U.S.C. § 1653 as permitting amendment of defective allegations of jurisdiction, but not defective jurisdictional facts themselves); *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 806 (5th Cir. 1991) (permitting amendments of pleadings which are defective in form, but not those defective in substance)).)

FIRREA-based arguments in support of the motion to dismiss for lack of subject-matter jurisdiction.  For both reasons, the court declines to conduct Rule 12(b)(6) analysis.

17

The cases cited by Defendants are distinguishable in that they confronted situations where the courts dealt with real, factual impediments to the exercise of federal-diversity subject-matter jurisdiction. Of course, actual and complete diversity of citizenship is a non-problem in this case, and jurisdiction pursuant to § 1332(a) is unchallenged. Applying the principle of the cited cases to this situation – *i.e.*, that "[federal jurisdiction] may not be created by amendment," 3 James Wm. Moore et al., Moore's Fed. Practice ¶ 15.14 (3d ed. 2005) – the court is not persuaded that there is presently a lack of subject-matter jurisdiction absent a corrective amendment to the complaint. Even with Count V before the court in the original complaint, SunSouth is asserting claims against the two successors-in-interest of Central Progressive Bank for wrongful conduct committed *after* the FDIC's receivership. Defendants' theory that the operative complaint implicates some grievance against the FDIC as receiver, thereby requiring FIRREA exhaustion of remedies, has already been rejected. Hence, the court rejects Defendants' first objection to amendment of the complaint.

Next, Defendants claim that allowing the proposed amendment is futile because it would remain subject to dismissal for lack of subject-matter jurisdiction, improper venue, and failure to state a claim. Defendants assert that SunSouth's amendment to include allegations of its status as a third-party beneficiary to the Purchase and Assumption Agreement of the First NBC-HCB Financial sale

agreement is futile because courts have held that FIRREA does not confer third-party beneficiary status upon a failed bank's creditors.  (*See* Doc. # 35, at 6–8 (citing *Ala. Dep't of Revenue v. F.D.I.C.*, Case No. 2:11-CV-272-MEF, 2012 WL 2716273 (M.D. Ala. July 9, 2012)).)  There may be merit to this argument, but Defendants do not argue that any or all of SunSouth's four claims rise or fall on the legitimacy of SunSouth's third-party beneficiary status and rights.  That is, SunSouth still asserts, as it did in the original complaint, its direct right as a party to the Participation Agreement to sue Defendants based on the Participation Agreement.  Thus, allowing the amended complaint is not an exercise in futility.[6][7]

Lastly, Defendants argue that they will suffer prejudice if the amendment is allowed.  They claim that allowing SunSouth to submit an amended complaint would require them to prepare a second motion to dismiss on similar grounds.  That Defendants have failed to persuade the court that subject-matter jurisdiction is lacking in their first round of briefing is no reason to deny SunSouth's motion to amend its complaint.  Defendants also protest that SunSouth has persisted in requesting discovery of documents, requests that Defendants say are incompatible

---

[6] SunSouth has not replied to Defendants' response brief.  If SunSouth chooses, it may renege on its third-party beneficiary allegations in the amended complaint without seeking leave of the court.

[7] SunSouth's other arguments on futility are a nearly verbatim repetition of the arguments that SunSouth failed to exhaust administrative remedies.  (Doc. # 35, at 8–12.)

with SunSouth's amended claims.  If that is so, Defendants may take up the issue with the Magistrate Judge assigned to this case.

SunSouth's motion for leave to amend its complaint is due to be granted as Defendants have not convinced the court that the motion is moot, futile, or prejudicial.

## V.  CONCLUSION

Based on the foregoing analysis, it is ORDERED that:

(1)   Defendants' motion to dismiss, as amended (*see* Docs. # 16, 18), is DENIED;

(2)   SunSouth's motion to amend (Doc. # 31) is GRANTED;

(3)   SunSouth is DIRECTED to file its amended complaint on or before **August 8, 2014**.

DONE this 31st day of July, 2014.

                                          /s/ W. Keith Watkins  
                              CHIEF UNITED STATES DISTRICT JUDGE