IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

SUNSOUTH BANK,         )
         )
      Plaintiff,      )
         )
    v.        )     CASE NO. 1:13-CV-379-WKW
         )         [WO]
FIRST NBC BANK, *et al.*,    )
         )
      Defendants.    )

## MEMORANDUM OPINION AND ORDER

Before the court is the renewed motion to dismiss filed by Defendants First NBC Bank and HCB Financial Corp. (Doc. # 69.) The motion has been fully briefed. (Docs. # 70, 79, and 81.) Defendants advance multiple theories in support of dismissal, but upon consideration of the relevant factors, the motion is due to be granted for the sole reason that subject-matter jurisdiction is lacking.

## I. JURISDICTION AND VENUE

Defendants contend that this court lacks subject-matter jurisdiction and that venue is improper. (Doc. #70, at 5–21.) Neither Defendant contests personal jurisdiction.

## II. STANDARD OF REVIEW

Defendants invoke Rule 12(b)(1) in support of their renewed motion to dismiss, which they filed on October 15, 2015. Rule 12(b) "defenses must be

made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Defendants answered SunSouth's complaint in September 2013, but it is never too late to point out a federal court's lack of subject-matter jurisdiction. The court must dismiss an action if it determines "*at any time* that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3) (emphasis added).

Attacks on subject-matter jurisdiction come in two forms: facial and factual. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a 12(b)(1) facial attack, the court evaluates whether the complaint, along with any attached exhibits, "sufficiently allege[s] a basis of subject matter jurisdiction" and employs standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

A Rule 12(b)(1) factual attack, however, "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation marks omitted). When the attack is factual, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

2

evaluation for itself the merits of jurisdictional claims." *Id.* "The district court has the power to dismiss for lack of subject-matter jurisdiction on any of three separate bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *McElmurray*, 501 F.3d at 1251 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (internal quotation marks omitted)).

## III.  BACKGROUND

This breach of contract action arises from a transaction between two banks. In its remaining claims, SunSouth alleges breach of contract on the part of both defendants.  The facts and procedural history will be briefly recounted.

### A.  <u>Facts</u>

On February 4, 2009, SunSouth bought a 40.1553% participation interest in loans made by Central Progressive Bank ("CPB") to Mississippi Investors VI, LLC ("Mississippi Investors").  SunSouth's rights are recorded in a Participation Agreement.  (*See* Doc. # 23-1.)  On February 5, 2009, SunSouth assigned a sub-participation interest to Citizens State Bank for 58.566% of its 40.1553% participation interest.  Per the Participation Agreement, SunSouth held the "first out" rights to be paid in full in the event that Mississippi Investors defaulted on its loans to CPB.

In contemplation of the CPB loans, Mississippi Investors executed three promissory notes. The first note was secured by property in Stone County, Mississippi ("Mississippi Collateral"). (Doc. # 70, at 1; Ralph Menetre Aff., Doc. # 70-1, at 2.) CPB's security interest in the Mississippi Collateral was subordinate to the security interest of Double A Firewood, Inc. ("Double A Firewood"). Prior to the execution of the Participation Agreement, Mississippi Investors had delivered a deed of trust on the Mississippi Collateral to Double A Firewood as security for a loan. The remaining two notes were secured by property located in Stone County, Mississippi, commonly known as Villages D and E. CPB held a first priority security interest in Villages D and E. (Doc # 70, at 2; Menetre Aff., Doc. # 70-1, at 3.)

Mississippi Investors defaulted on the Double A Firewood loan, and Double A Firewood began foreclosure proceedings. CPB approached SunSouth and requested that SunSouth participate in the purchase of the Double A Firewood loan because CPB's subordinate lien would be stripped at the foreclosure sale. (Doc. # 70, at 2; Menetre Aff., Doc. # 70-1, at 4–5.) SunSouth declined to participate in the purchase. CPB then notified SunSouth of its position that the purchase of the Double A Firewood loan would terminate the Participation Agreement. (Doc. # 70, at 2; Menetre Aff., Doc. # 70-1, at 5.)

On April 9, 2010, CPB purchased the Double A Firewood loan, and Double A Firewood assigned the deed of trust and the promissory note securing the Double A Firewood loan to CPB.  On April 16, 2010, CPB purchased the Mississippi Collateral at the foreclosure sale.  SunSouth did not attend or participate in the foreclosure proceedings.  (Doc. # 70, at 3.)  From April of 2010 until May of 2011, CPB and SunSouth disputed the "first out" and "pro-rata" provisions of the Participation Agreement.  (Doc. # 70, at 3; *see* Menetre Aff., Doc. # 70-1, at 5–6; Doc. # 70-3.)

CPB later failed, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver.  (Doc. # 1-7, at 3.)  The FDIC sold all of CPB's assets, including ownership of the Mississippi Investors loans and entitlement to collection for default, in a "whole bank" sale to First NBC Bank.  (*See* Doc. # 22 (Purchase and Assumption Agreement Among the FDIC as Receiver, the FDIC, and First NBC).)  There is no allegation that the FDIC took any collection action on the CPB loan to Mississippi Investors.  According to SunSouth, First NBC purchased all rights and assumed all obligations set out in the Participation Agreement that CPB entered with SunSouth.

The complaint alleges that First NBC successfully collected several hundred thousand dollars after selling collateral that secured the Mississippi Investors loans. The funds allegedly have been kept segregated and are identifiable.  SunSouth

claims that is entitled to all of these funds under the Participation Agreement. First NBC has refused to surrender the funds or provide an accounting to SunSouth. (Doc. # 1-7.)

First NBC sold its interest as the lead bank in the Mississippi Investors loans to HCB Financial. SunSouth maintains that HCB Financial assumed responsibilities to SunSouth under the Participation Agreement. SunSouth has demanded delivery of its property and an accounting from HCB Financial, and HCB Financial has refused both demands. HCB Financial did inform SunSouth, however, that the sale of collateral had resulted in the receipt of approximately $640,000.

## B.    **Procedural History**

On February 26, 2013, SunSouth filed this lawsuit against First NBC and HCB Financial in Houston County Circuit Court. (Doc. # 1-7.) On June 5, 2013, HCB Financial removed the case, with first NBC's consent, to the United States District Court for the Middle District of Alabama. (Docs. # 1 and 2.) Defendants answered the complaint. (Docs. # 12 and 13.) In February of 2014, Defendants moved to dismiss the complaint in its entirety pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure. (Doc. # 18, at 1.) Defendants asserted a facial challenge to this court's subject-matter jurisdiction. The 12(b)(1) motion was denied on the grounds that Defendants failed to respond

to the complaint's "contention that [SunSouth] did not have any claims to assert" against CPB or the FDIC while the FDIC held CPB's assets in receivership.  (Doc. # 41, at 15.)

On October 15, 2015, Defendants filed a renewed motion to dismiss, asserting a factual challenge to this court's subject-matter jurisdiction.  Defendants insist that SunSouth's claims arose from a dispute with CPB prior to the FDIC's receivership and therefore that they are subject to the administrative exhaustion requirement of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").  (Doc. # 70, at 7–8.)  SunSouth responds that Defendants did not identify what claim SunSouth should have filed and that FIRREA does not apply.  (Doc. # 79.)

SunSouth previously abandoned Counts II, IV, and V, and they were dismissed.  (Doc. # 57, at 1.)  The remaining counts are Count I, Breach of the Participation Agreement by First NBC, and Count III, Breach of the Participation Agreement by HCB Financial.  (Doc. # 1-7, at 6–7.)

## IV.  DISCUSSION

Defendants contend that subject-matter jurisdiction is lacking because SunSouth failed to comply with the requirements of FIRREA.

Congress enacted FIRREA, among other reasons, to enable the FDIC to wind up the affairs of failed financial institutions.   The law creates an

administrative claims process for banks in receivership with the FDIC.  *See Am.*

*Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011) (citing 12 U.S.C.

§ 1821(d)(3)–(13)).   Judicial review of disallowed claims is permitted after

exhaustion of a claimant's administrative remedies.  *See* 12 U.S.C. § 1821(d)(6).

But where a claimant has failed to comply with § 1821(d)(6), courts are barred

from exercising jurisdiction over

> (i) any claim or action for payment from, or any action seeking a
> determination of rights with respect to, the assets of any depository
> institution for which the [FDIC] has been appointed receiver,
> including assets which the [FDIC] may acquire from itself as such
> receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the
> [FDIC] as receiver.

*Id.* § 1821(d)(13)(D); *see also Damiano v. F.D.I.C.*, 104 F.3d 328, 333 (11th Cir.

1997) ("For post-receivership claims, the court has no subject matter jurisdiction

unless the claimant has exhausted the administrative remedies.").  Thus,

> the plain language of [§ 1821(d)(13)(D)] . . . divests the district
> court[s] of jurisdiction over requests for relief which can be
> characterized as:   (1) claims for payment from assets of any
> depository institution for which the [FDIC] has been appointed
> Receiver; (2) actions for payment from assets of such depository
> institutions; (3) actions seeking a determination of rights with respect
> to the assets of such depository institutions; and (4) a claim relating to
> any act or omission of such institution or the [FDIC] as receiver.

*Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir.

1999) (citing *Nat'l Union Fire Ins. v. City Sav., F.S.B.*, 28 F.3d 376, 393 (3d Cir.

1994)). Successors-in-interest to the FDIC that purchase the assets of failed banks stand in the shoes of the FDIC and may assert as a defense that a party has failed to exhaust administrative remedies pursuant to FIRREA. *Id.* at 1263 n.3; *see also Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 447 (E.D.N.Y. 2010).

Plaintiffs cannot strategically draft complaints in order to avoid FIRREA's jurisdictional bar. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1144 (D.C. Cir. 2011). Application of the administrative exhaustion requirement is not based on the entity named as the defendant in the complaint. Instead, it is based upon "the actor responsible for the alleged wrongdoing: 'Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a "claim" within the meaning of FIRREA's administrative claims process.'" *Westberg v. FDIC*, 741 F.3d 1301, 1306 (D.C. Cir. 2014) (quoting *Am. Nat'l Ins. Co.*, 642 F.3d at 1144) (emphasis in the original).

Under FIRREA, "claim" is "a term-of-art that encompasses only demands that are resolvable through the administrative process set out by FIRREA." *Am. Nat'l Ins. Co.*, 642 F.3d at 1142. A claim that is based upon a pre-insolvency contract exists before insolvency even if payment is not required until a stated event occurs. *McMillian v. FDIC*, 81 F.3d 1041, 1047 (11th Cir. 1996) (discussing the FDIC's denial of a claim for severance payments because the employee was

9

not terminated until after insolvency and noting that "[t]he fact that certain post-insolvency events affect liability under a pre-insolvency contract does not necessarily mean that the claim did not exist before insolvency."). Generally, a claim "first accrues when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action . . . and the plaintiff was or should have been aware of their existence." *FDIC v. Kane*, 148 F.3d 36, 39 (1st Cir. 1998) (internal citation and quotation marks omitted).

Because Defendants' first motion to dismiss asserted a facial attack, the Rule 12(b)(1) analysis was confined to the complaint's allegations, which were accepted as true. The complaint's allegations that SunSouth did not have a claim against CPB or the FDIC while CPB's assets were in receivership, therefore, were controlling. (Doc. # 41, at 15.) Denial of Defendants' initial motion to dismiss was required based upon Defendants' failure to rebut SunSouth's assertion that FIRREA does not apply. (Doc. # 41, at 14.) In the present motion, which asserts a factual attack, Defendants include affidavits and other evidence to support their arguments that FIRREA poses a jurisdictional bar to this lawsuit, and that evidence contradicts the complaint's allegations. SunSouth has not offered any evidence

rebutting Defendants' evidence.  Accordingly, the evidence is undisputed.[1]  (*See* Doc. # 79.)

Defendants maintain that the dispute regarding the enforcement of the Participation Agreement began immediately after CPB purchased the Double A Firewood loan and the Mississippi Collateral.  (Doc. # 70, at 12.)  They submit the affidavit of Ralph N. Menetre III, who managed CPB's operations on the north shore of Lake Ponchartrain and in Lacombe, Louisiana (Doc. # 70-1), and a letter to CPB's counsel (Doc. # 70-3) to show the ongoing dispute prior to the FDIC's appointment as receiver.  According to Defendants' evidence, the dispute began when CPB informed SunSouth of its belief that the purchase of the Double A Firewood loan would terminate SunSouth's interest in the Participation Agreement.  (Menetre Aff., Doc. # 70-1, at 5.)  CPB and SunSouth never reached an agreement regarding the enforceability of the Participation Agreement prior to the FDIC's receivership.

The complaint alleges that "Mississippi Investors subsequently defaulted on its loans, and CPB engaged in collection actions."  (Doc. # 1-7, at 3.)  The next paragraph states that "CPB failed as a banking institution and was placed in receivership by the State of Louisiana, and the Federal Deposit Insurance

---

[1] SunSouth advances two arguments against the renewed motion. First, it argues that the court previously ruled on the Rule 12(b)(1) issue.  The previous decision, however, considered a facial attack, not a factual attack.  The second argument is based upon cases that do not overcome the defense of a lack of subject-matter jurisdiction.  (*See* Doc. # 41, at 13 n.4.)

Corporation was appointed as receiver." (Doc. # 1-7, at 3.)  The complaint did not explain that the Mississippi Investors' default was on the loan to Double A Firewood, which held the first priority lien on the Mississippi Collateral.  The complaint did not contain allegations explaining the discussions and dispute regarding the Participation Agreement that occurred as a result of the purchase of the Double A Firewood loan.  The evidence adduced outside of the pleadings establishes that SunSouth's claim arose prior to receivership and is in effect a claim against CPB.  The obligations under the Participation Agreement, if any, arose prior to receivership, and the dispute concerning the nature of the obligations and the enforceability of the Participation Agreement arose prior to receivership.  Therefore, based upon the undisputed evidence, the original contract obligation was that of CPB, which existed prior to and during receivership.

SunSouth's claims are functionally based upon CPB's assertion that the Participation Agreement was cancelled by the purchase of the Double A Firewood loan.  The claims are "inextricably related" to CPB's actions pre-receivership.  *See Westberg*, 741 F.3d at 1308 (finding that the plaintiff's claim was functionally against the FDIC and noting that "[i]t might be a different story if the FDIC had not repudiated the loan and [the acquiring institution] had instead purchased the loan from the FDIC intact and then itself repudiated or breached the agreement").  Defendants' actions regarding a Participation Agreement that was deemed

cancelled by CPB pre-receivership are not independent from the actions of CPB. SunSouth's lawsuit is "seeking a determination of rights with respect to the assets of [CPB]" and relates to the actions of CPB, which originated pre-receivership. *See Am. First Fed., Inc.*, 198 F.3d at 1263. Therefore, the claims are subject to the exhaustion requirement of FIRREA. *See id.*

It is undisputed that SunSouth did not file an administrative claim while the FDIC was receiver. Accordingly, this court lacks subject-matter jurisdiction.[2]

## V. CONCLUSION

Based on the foregoing analysis, it is ORDERED that:

(1)     Defendants' motion to dismiss (Docs. # 69) is GRANTED for lack of subject-matter jurisdiction based upon FIRREA's jurisdictional bar; and

(2)     This action is DISMISSED.

A separate final judgment will be entered.

DONE this 29th day of December, 2015.

                         /s/ W. Keith Watkins
            _____
            CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Because the court does not have subject-matter jurisdiction, the remaining arguments that Defendants advance in the renewed motion to dismiss need not be discussed.